IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

TERMAINE AIKENS,

    Petitioner,

v.                                             CASE NO. 4:12-cv-192-MP-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing, through counsel, a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and is proceeding pursuant to an Amended Petition, Doc. 6.  The Petition stems from Petitioner's Madison County convictions of sexual battery, home invasion robbery with a firearm, robbery with a firearm, and kidnaping, for which he received a life sentence.  Respondent filed a response and an appendix with relevant portions of the state-court record.  Doc. 18.  Although afforded an opportunity to file a reply, Petitioner did not do so.  Upon due consideration of the Petition, the Response, and the state-court record the undersigned recommends that the Petition be denied.[1]

## State-Court Proceedings

The events leading to Petitioner's conviction occurred in February 2006; Petitioner was 25 years of age and the victim, "MSF," was 78 years of age.  Doc. 18-5

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

at 109-15.  The evidence adduced at trial that is relevant to Petitioner's habeas claims is summarized in the state court's order denying postconviction relief, and Petitioner has not disputed the accuracy of that summary:

> The facts leading to the February 11, 2006 incident began when the victim was alone in her residence and heard her doorbell ring. *Trial Transcript* 192-193. MSF looked through her blinds and saw the perpetrator standing outside with a box in his hand. *Trial Transcript* 193. The perpetrator stated that the box was a delivery for MSF that had been mistakenly delivered to him. *Trial Transcript* 193. When MSF opened the door, the perpetrator put a gun to her face and told her that he was going to rob her. *Trial Transcript* 196.
>
> After taking what money was within MSF's purse, the perpetrator forced her to drive to the bank and make several withdrawals from her ATM. *Trial Transcript* 198- 199; 206. After completing the withdrawals, the perpetrator and MSF returned to her residence. *Trial Transcript* 209. At her residence, the perpetrator sexually assaulted MSF. *Trial Transcript* 213.
>
> Although Count 5 (involving a different victim and a different date) was severed and not tried with counts 1-4, this Court allowed evidence from that incident for the limited purpose of proving identity, opportunity, intent, preparation or plan under *Williams v. State*, 110 So.2d 654 (Fla. 1959). The *Williams* rule evidence from the February 16, 2006 incident revealed that the victim, ED, was alone at her residence when she heard the doorbell ring. *Trial Transcript* 337-338. When ED went to her door and asked who was there, the perpetrator relied that he had a package for ED. *Trial Transcript* 339. Upon ED opening the door, the perpetrator put a gun to her face. *Trial Transcript* 340. The perpetrator handed ED a white postal box and pushed her into her residence. *Trial Transcript* 341. As she was being led to the back of the residence, ED left this white box on her kitchen table. *Trial Transcript* 341. When they reached the hallway leading to ED's bedroom, ED stepped into her bathroom. *Trial Transcript* 342-343. In her bathroom, ED reached for her "Medic Alert" and pushed the "alert" button. *Trial Transcript* 343. "Medic Alert" immediately answered and asked if anything was wrong. *Trial Transcript* 344. At this point, the perpetrator retreated from ED and left her residence, leaving behind the postal box. *Trial Transcript* 345.
>
> Although both victims in each of the incidents provided a general description of the perpetrator, they were unable to positively identify the Defendant. To support its charges, however, some of the key evidence

> presented by the State linking the Defendant as the perpetrator were as follows: (1) an ATM receipt from one of MSF's withdrawals bearing the Defendant's palm print; (2) the white box left at ED's residence with the Defendant's home address on it; and (3) the Defendant's palm print lifted from the white box.

*Id*. Petitioner's convictions and sentence were affirmed *per curiam* without opinion. *Aikens v. State*, 25 So. 3d 1224 (Fla. 1st DCA 2010).

Petitioner filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850. Doc. 18-5 at 59-72. The motion was summarily denied without an evidentiary hearing. Doc. 18-5 at 109-15. The First DCA affirmed *per curiam* without written opinion. *Aikens v. State*, 78 So.3d 536 (Fla. 1st DCA 2012).

Petitioner filed a state petition for writ of habeas corpus in the First DCA alleging ineffective assistance of appellate counsel on direct appeal from judgment of conviction and sentence. Doc. 18-6 at 26-36; *see Rutherford v. Moore*, 774 So.2d 637, 643 (Fla. 2000) (claims of ineffective assistance of appellate counsel are properly raised in a petition for writ of habeas corpus addressed to the appellate court that heard the direct appeal); Fla.R.App.P. 9.141(b)(c). The First DCA denied relief on the merits without opinion. Doc. 18-6 at 101.

The instant habeas petition, which Respondent concedes is timely and exhausted, followed. Petitioner asserts six claims for relief. Claims 1-3 assert claims of ineffective assistance of counsel in connection with the physical evidence (fingerprint cards and ATM receipts) that was used to convict him. Petitioner contends that counsel should have filed a motion to suppress evidence that Petitioner asserts was tainted or falsified, that counsel was ineffective for failing to investigate illegal acts by police officers, and that counsel failed to object to the State's use of the allegedly false

evidence. Claim four asserts that Petitioner's appellate counsel rendered ineffective assistance by inadequately briefing the denial of trial counsel's motion for judgment of acquittal. Specifically, Petitioner contends that the evidence was insufficient to find that he did not possess a firearm during the crimes. Claim five asserts that the trial court erred in admitting *Williams Rule* evidence of a collateral crime against victim "ED". Ground six asserts that the trial court erred in denying his motion for judgement of acquittal on the ground that the evidence was insufficient to prove possession of a firearm during the crime. Doc. 6.

## Standard of Review

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) imposes limitations on the scope of this Court's review. Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow,* ___ U.S. ___, 134 S.Ct. 10, 15 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that

was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Burt*, 134 S.Ct. at 15  (standard for reviewing claims of legal error by state courts is "highly deferential").   This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Id*.   This highly deferential standard carries special force in habeas cases asserting ineffective assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under *Strickland*[2]—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'"   *Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037 (1976).

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.   AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"   *Id*. (quoting *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786–787 (2011).  "'If this standard is difficult to meet'—and it is—'that is because it

---

[2]*Strickland v. Washington*, 466 U.S. 668, 686 (1984) (holding that to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  A court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong).

was meant to be.'" *Id*. (quoting *Harrington*, 131 S.Ct. at 786). "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Id*. (quoting *Harrington*, 131 S.Ct. at 786).

In *Harrington*, the Supreme Court held that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." "Under *Harrington's* general rule, then, a state court's simple one-word affirmance is presumed to be an adjudication on the merits of the petitioner's claim." *Shelton v. Secretary, Dept. of Corrections* 691 F.3d 1348, 1353 -1354 (11th Cir. 2012).

***Claims 1-3: Ineffective assistance concerning physical evidence***

As Respondent points out, Claims 1-3 are reproduced nearly verbatim from Petitioner's Rule 3.850 motion.  *See* Doc. 6, Doc. 18-5 at 59-72.  Petitioner argues that the police engaged in fraud and violated police procedures for collecting and handling physical evidence.  Petitioner contends that the evidence intake log shows that evidence from a vacuum filter used at the crime scene and fingerprint cards were logged in by the Madison Police Department, but the log does not reflect the intake of any ATM receipts.  ATM receipts were submitted to the FDLE together with the fingerprint cards.  *See* Doc. 1, Exhibits A & B.  Petitioner argues that "it is evident that someone tampered with/or added [ATM receipts] to the evidence before submission to FDLE.  Petitioner contends that Madison PD Investigator Ebberson told Plaintiff that he believed Plaintiff had committed the crime and he would see that Plaintiff was charged

whether he did it or not.  Petitioner contends that his trial counsel should have investigated the police misconduct and moved to suppress the evidence, and should have objected to its admission at trial.  Doc. 6.

In rejecting these claims on postconviction review, the state court discussed the disputed physical evidence at length and assessed Plaintiff's claims with respect to each type of evidence.  In view of the thorough nature of the court's discussion, the Court will set out the discussion in its entirety:

### LATENT FINGERPRINT CARDS

During the State's investigation of MSF's vehicle, Investigator Nathan S. Curtis obtained several latent fingerprint lift card samples. These samples were submitted to the Florida Department of Law Enforcement (FDLE) for analysis. In his motion, the Defendant compares the Madison County Sheriff's Office Evidence Intake Log (Evidence Intake Log), which indicates that eight latent fingerprint lift cards were obtained by Investigator Curtis, with the FDLE tracking form, which indicates that only seven latent fingerprint cards were submitted to the FDLE for analysis. *See attached Evidence Intake Log* and *FDLE Tracking Form*. The Defendant also emphasizes that the Evidence Intake Log fails to indicate the date the latent fingerprint lift cards were logged into the system. The Defendant maintains that this establishes evidence of tampering. Therefore, the Defendant argues that counsel was ineffective for failing to object to the introduction of this evidence. The argument is without merit.

First, these latent fingerprint lift cards were never analyzed and, therefore, never admitted into evidence. The FDLE lab analyst testified that after she identified the Defendant's palm print on an ATM receipt, she did not analyze any of the latent fingerprint lift card samples sent to her. *Trial Transcript* 327-328. She explained that at "FDLE you have a policy that is called a single identification policy and once we identify our suspect we shut down." *Trial Transcript* 327. Thereafter, the FDLE does not conduct further analysis unless so requested. *Trial Transcript* 327. This is also reflected in the FDLE report submitted by analyst Denise Glover, which indicates that the only item of evidence developed for identification was the ATM receipt. *See attached FDLE Report*. Hence, as these latent fingerprint cards were never analyzed, the results of these samples were never admitted into evidence. Accordingly, counsel could not have filed a

motion to suppress nor could he have objected to the introduction of this evidence. Therefore, as the latent fingerprint lift cards were never moved into evidence, counsel's performance cannot be said to be deficient.

Furthermore, insomuch as the Defendant argues that counsel was ineffective for failing to cross examine the investigators on the basis of this discrepancy, this Court concludes that this argument fails under the *Strickland* standard. First, counsel effectively cross-examined the investigators by eliciting testimony that these samples failed to identify the Defendant. *Trial Transcript* 284. Second, during the cross-examination of the FDLE analyst, counsel elicited testimony that these samples had, in fact, never been analyzed. *Trial Transcript* 327-328. Therefore, counsel established that these samples failed to provide any support to the State's case.

More importantly, because these samples were never analyzed, any argument alleging that this discrepancy establishes tampering would require substantial speculation, such as that this "missing" latent fingerprint card had been analyzed without FDLE's knowledge, found to contain anther suspect's fingerprint and, in an attempt to frame the Defendant, the investigators disposed on this fingerprint lift card prior to the trial. However, "[p]ostconviction relief cannot be based on speculation or possibility. *See Maharaj v. State*, 778 So.2d 944, 951 (Fla. 2000)(holding that the argument that counsel provided ineffective assistance by failing to seek recusal of the trial judge was without merit because the allegations that the trial judge was involved in an attempt to secure a bribe were "sheer speculation").

Finally, even assuming that the failure to bring up this discrepancy during cross-examination amounted to deficient performance, the Defendant has still failed to establish "prejudice" under the *Strickland* standard. As there was substantial evidence linking the Defendant to the crime, the Defendant cannot establish that "but for" this impeachment the result of the trial would have been different. *See Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, *but for* counsel's unprofessional errors, the result of the proceeding would have been different."). Both an ATM receipt found in MSF's vehicle and the white postal box left at ED's residence bore Defendant's palm print. In addition, this latter postal box listed the Defendant's home address. Therefore, the Defendant cannot establish that but for counsel's failure to cross-examine the investigators regarding discrepancies in the recordkeeping of the latent fingerprint card samples, the results of which were never admitted because they were never analyzed, the outcome of the trial would have been different. Hence, the Defendant's arguments are without merit.

## ATM RECEIPTS

During its investigation, law enforcement discovered three ATM receipts inside MSF's vehicle. One of these receipts was later found to bear the Defendant's palm print. The Defendant argues that counsel was ineffective for failing to file a motion to suppress and/or object to the introduction of this ATM receipt. To support his argument, the Defendant again compares the Evidence Intake Log with the FDLE Tracking Form. The Defendant points out that the three ATM receipts submitted to FDLE for fingerprint analysis are not reflected in the Evidence Intake Log. *See attached Evidence Intake Log* and *FDLE Tracking Form*. Because of this discrepancy, the Defendant contends that there was evidence of tampering and counsel should have filed a motion to suppress and/or objected to the introduction of this evidence by arguing that there was a gap in the "chain of custody." The Defendant's argument is without merit.

"To bar the introduction of otherwise relevant evidence due to a gap in the chain of custody, a defendant must show there was a probability of tampering with the evidence." *Davis v. State*, 788 So.2d 308, 310 (Fla. 5th DCA 2001). "A mere possibility of tampering is insufficient." Id. "Once the objecting party produces evidence of probable tampering, the burden shifts to the proponent of the evidence 'to establish a proper chain of custody or submit other evidence that tampering did not occur.'" *Murray v. State*, 3 So.3d 1108, 1115 (Fla. 2009), *reh'g denied (*Feb. 26, 2009); *Murray v. State*, 838 So.2d 1073, 1082 (Fla. 2002)("Relevant physical evidence is admissible unless there is an indication of tampering.").

Here, regarding the ATM receipt, the Defendant has (1) failed to establish a probability of tampering, and (2) failed to establish a gap in the chain of custody.

First, these allegations are again based on speculation. The Defendant speculates that Investigator Curtis and Investigator Ebberson were involved in a conspiracy in which they planted the Defendant's palm print on MSF's ATM receipt. Although the Defendant attempts to bolster his theory by contending that he had an argument with Investigator Ebberson on a prior occasion, thus providing Investigator Ebberson with a motive to tamper with this evidence, the Defendant's allegations are unsupported and "[p]ostconviction relief cannot be based on speculation or possibility." *See Maharaj*, 778 So.2d 944. Therefore, the Defendant has failed to establish a probability of tampering. *See Nieves v. State*, 739 So.2d 125, 126 (Fla. 5th DCA 1999) . . . *See also Frederiksen v. State*, 312 So.2d 217 (Fla. 3d DCA 1975) [.]

>      Second, even assuming that the Defendant's allegation establishes a probability of tampering, the Defendant's argument fails because the State established a proper chain of custody at the Defendant's trial. Investigator Curtis testified that had collected these ATM receipts from MSF's vehicle on February 13, 2006. *Trial Transcript* 259-260. Following protocol, Investigator Curtis turned the ATM receipts over to the evidence custodian, Investigator Ebberson. *Trial Transcript* 260. Next, the branch manager of the Bank of America in Madison County identified the receipts obtained by Investigator Curtis as being from her bank. *Trial Transcript* 266-271. Thereafter, Investigator Ebberson testified that he received these ATM receipts from Investigator Curtis and personally submitted them to the FDLE for fingerprint analysis on February 15, 2006. *Trial Transcript* 274-275; 278-279. This sequence of events is also reflected in the attached FDLE Tracking Form, which indicates that it received a sample from Investigator Ebberson on February 15, 2006. Finally, a latent print examiner for FDLE testified that she received the at-issue ATM receipts and explained that she created an enlarged photocopy of one of these ATM receipts. *Trial Transcript* 319. Thereafter, she conducted an analysis on this ATM receipt, which identified the Defendant's right palm print. *Trial Transcript* 319-321; 324. Accordingly, based upon the testimony of these witnesses, the State established a proper chain of custody.
>
>      Quite simply, the Defendant's allegations of tampering with the ATM receipts are without merit. Accordingly, any motion to suppress or any objection to the introduction of this evidence would be denied. Therefore, counsel cannot be said to be ineffective on this basis. *See Reed v. State*, 875 So.2d 415 (Fla. 2004)(Defense counsel was not ineffective in failing to challenge the chain of custody of the State's evidence, where the evidence established chain of custody and any challenge would have been fruitless.); *Gettel v. State*, 449 So.2d 413, 414 (Fla. 2d DCA 1984)("Trial counsel's failure to file a motion to suppress the prescriptions was not ineffective assistance of counsel because we find that the motion to suppress would not, even if filed, properly have been granted. There was no prejudice to defendant in the failure to file such a motion.").

Doc. 18-5 at 109-15.

The state court's thorough assessment of Petitioner's claims supports a conclusion that Petitioner's claims of evidence tampering or wrongdoing by police lack any factual support in the record. Petitioner's claims are based on conclusional and

speculative assertions that are insufficient to support a claim for habeas corpus relief. Moreover, because Petitioner's speculative claims were directly refuted by the trial record, the state court concluded that counsel did not render deficient performance in connection with the physical evidence. With respect to the fingerprint cards, as the state court concluded Petitioner established no prejudice because other physical evidence – the ATM receipts and the delivery box – linked him directly to the crime. Petitioner has adduced no evidence that undermines the state court's determination that a proper chain of custody was established for the ATM receipts, and therefore that counsel was not ineffective for not challenging the evidence on that ground.

On this record, Petitioner has failed to show that the state court's rejection of these ineffective-assistance claims was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt,* 134 S. Ct. at 15.

### Claim 4: Ineffective Assistance of Appellate Counsel

Petitioner contends that although his trial counsel properly preserved the denial of his motion for JOA on the firearms issue for appellate review, his appellate attorney inadequately briefed the issue by failing to cite relevant authority. Petitioner contends that the appellate court inferred that the argument was "insignificant and unimportant". Petitioner argues that the State failed to prove at trial that the robbery, sexual battery, and kidnaping charges were committed while Petitioner was in actual possession of a firearm, and that had appellate counsel adequately briefed the denial of the JOA there is a reasonable probability that the denial of the JOA would have been reversed on direct appeal. Doc. 6 at 14-15.

Petitioner raised this issue in his state petition for a writ of habeas corpus filed in

the First DCA, and the First DCA denied the petition on the merits without opinion. Doc. 18-6 at 26-36, 101. When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington*, 131 S.Ct. at 785.

To prevail on a claim of ineffective assistance of appellate counsel, Petitioner must first show that appellate counsel was objectively unreasonable in not raising the issue or argument that Petitioner claims was omitted. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). The exercise of judgment involved in framing an appeal makes it "difficult to demonstrate that [appellate] counsel was incompetent" under *Strickland* for omitting a particular argument. *Smith*, 528 U.S. at 285-86 (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")). In assessing appellate counsel's performance, "the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue." *Heath v. Jones*, 941F.2d 1126, 1130 (11th Cir. 1991). Rather, "effective advocates 'winnow out' weaker arguments even though the weaker arguments may be meritorious." *Id*. at 1131. When appellate counsel reviews the entire record, thinks about various claims, and then chooses to pursue only certain issues on appeal, counsel has not rendered ineffective assistance. *Id*. Although a non-appealed issue might have been successful if it had been raised, appellate advocacy must be "judged in its entirety." *Id*. Further, to

determine prejudice in the context of appellate counsel's effectiveness, the Court must review the merits of the neglected claim or claims.  *Heath*, 941 F.2d at 1132.  Failure to raise a claim will not be found prejudicial unless the claim would have a reasonable probability of success on appeal.  *Id*.

In this case, as Petitioner concedes, his appellate counsel did argue on appeal that the evidence was insufficient to prove possession of a firearm.  *See* Doc. 18-4 at 123.  Counsel framed the issue as: "Appellant argues that the trial court reversibly erred in denying his motion for judgment of acquittal on grounds that the State's evidence failed to establish the necessary element of the offenses as charged, to wit: the use or threatened use of a firearm or pistol during the commission of those offenses, and was thus legally insufficient to sustain his convictions."  *Id*.  It was one of two issues raised, and counsel devoted more than four pages of argument to the issue.  The argument necessarily focused on the evidence presented at trial, which included the victim's testimony that the only time she saw a gun was when the perpetrator first came to her door.  *Id*. at 131-33.

Petitioner's argument that counsel did not adequately brief this issue is squarely refuted by the record.  To the extent that Petitioner suggests counsel could have argued the issue differently, such argument is insufficient to show that counsel's performance was deficient, in view of the deference afforded to counsel's decisions as to how to present appellate arguments.  On this record, Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"  *Burt,* 134 U.S. at 15.

Case 4:12-cv-00192-WS-GRJ   Document 23   Filed 06/30/15   Page 14 of 20

Page 14 of 20
*Claim Five: Admission of Williams Rule Evidence*

Petitioner argues that the trial court erred in admitting "Williams Rule" evidence concerning a similar armed burglary committed at the home of victim ED. Petitioner contends that the admission of the evidence deprived him of his right to a fair trial. Doc. 6 at 17-18.

Under Florida law, similar fact evidence of other crimes, called *Williams* Rule evidence, "is admissible when relevant to prove a material fact in issue," such as motive, intent, preparation, or plan. Fla. Stat. § 90.404(2)(a); *Williams v. State*, 110 So.2d 654 (Fla.1959); *Lamontagne v. Sec'y, Dep't of Corr.*, 433 F. App'x 746, 749 (11th Cir. 2011). In this case, in May 2007 the State filed a Notice of its intent to offer *Williams* Rule evidence regarding the charge that Petitioner, while armed, used nearly identical means to enter the home of ED, another elderly female victim, a few days after the crimes against MSF. Doc. 18-1 at 21-22. The evidence was the subject of a motion in limine and a hearing on same. *Id*. at 42-73, 78-93. The parties' arguments, and the court's detailed ruling, were based on Florida evidentiary law. Doc. 18-1 at 129-32. The court concluded that the *Williams* Rule evidence was relevant to prove Petitioner's identity, plan, opportunity, and preparation and to show his "unusual modus operandi," all factors which the court could consider under Florida statutes and case law, and that the probative value of the evidence outweighed any danger of prejudice. *Id*. at 129. The court found that there were common facts between the crimes that were "so unique as to form a modus operandi so unusual that it would be reasonable to conclude that the same person committed both crimes and thus admissible to prove identity." *Id*. at 130. Such facts included that the victims were elderly widows living

alone in residential homes, and the perpetrator's use of a white postal box that he said belonged to the victim in order to gain entry into the victims' homes. *Id.* at 130-31. On direct appeal, Petitioner's counsel also challenged admission of the *Williams* Rule evidence, citing only state law. Doc. 18-4 at 123-28.

"[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, (1990); *see Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (explaining that errors that do not infringe on defendant's constitutional rights provide no basis for federal habeas corpus relief). "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir.1983); *accord, e.g., McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir.1992). "Indeed, the general rule is that a federal court will not review a trial court's actions with respect to the admission of evidence." *Shaw v. Boney*, 695 F.2d 528, 530 (11th Cir.1983). "A state evidentiary violation in and of itself does not support habeas corpus relief" and "[b]efore such relief may be granted, the violation must rise to the level of a denial of 'fundamental fairness.' " *Id.*; *see Jacobs v. Singletary*, 952 F.2d 1282, 1296 (11th Cir.1992) ("We review state court evidentiary rulings on a petition for habeas corpus to determine only 'whether the error, if any, was of such magnitude as to deny petitioner his right to a fair trial.' ... Erroneously admitted evidence deprives a defendant of fundamental fairness only if it was a 'crucial, critical, highly significant factor' in the [defendant's] conviction." (citations omitted)); *Link v. Tucker*, 870 F.Supp.2d 1309, 1324–30 (N.D. Fla. 2012) (district court order adopting magistrate judge's report and recommendation to deny § 2254 petition alleging, among other things, state trial court

abused its discretion by admitting evidence of petitioner's prior conduct).

Petitioner has not established that there was any error in the admission of the *Williams* Rule evidence under Florida law. *See, e.g., Durousseau v. State*, 55 So.3d 543, 552 (Fla. 2010) ("[W]e hold that the collateral crime evidence did exhibit unique similarities that established a modus operandi sufficient for proving identity. Pursuant to section 90.404(2)(a), evidence of other crimes, acts or wrongs is admissible to prove identity."); *Buenoano v. State*, 527 So.2d 194, 197 (Fla.1988) ("Under the *Williams* rule evidence of other crimes, wrongs and acts is admissible if it is relevant to and probative of a material issue even though the evidence may indicate the accused has committed other uncharged crimes or may otherwise reflect adversely upon the accused's character. Section 90.404(2)(a), Florida Statutes, (1983), codifies the ruling in *Williams v. State* and lists the purposes for which such evidence is deemed to be admissible: proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.").

Moreover, even if erroneous, such admission did not deprive Petitioner of a fundamentally fair trial, as the State presented substantial evidence of Petitioner's guilt through other evidence, including (1) an ATM receipt from one of MSF's withdrawals bearing the Petitioner's palm print; (2) the white box left at ED's residence with the Petitioner's home address on it; and (3) the Petitioner's palm print lifted from the white box. Finally, Petitioner has pointed to no authority holding that the admission of this type of collateral crimes evidence in these circumstances violates the federal constitutional guarantee of due process and a fair trial. *See Link*, 870 F.Supp.2d at 1328–29. Therefore, Petitioner has not shown the state court's rejection of his claim,

assuming it was fairly presented as a federal claim, was contrary to or an unreasonable application of clearly established federal law.

### Claim Six: Sufficiency of the Evidence

Petitioner contends that the State did not prove the firearm enhancement alleged for each offense of conviction. Doc. 6 at 19. Petitioner contends that the only evidence on this point was the victim's testimony that when she opened her door to Petitioner he held up a gun and said "this is a robbery, don't look at me." Petitioner contends that there was no evidence that a gun was present during the withdrawal of money at the ATM or during the rape. *Id*.

Respondent points out that this claim was not presented as an issue of federal constitutional law in the state courts, and therefore that the claim was not "fairly presented" for federal habeas corpus purposes. Even if Petitioner had raised the claim as one of federal constitutional law, the Court would find that relief should be denied. When reviewing a claim of the sufficiency of the evidence on federal habeas review, this Court is required to view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). As the Eleventh Circuit has explained:

> Faced with a record of historical facts that supports conflicting inferences, we must presume that the jury resolved such conflicts in favor of the prosecution, and we defer to the jury's judgment as to the weight and credibility of the evidence. *See Wilcox v. Ford*, 813 F.2d 1140, 1143 (11th Cir.1987). The simple fact that the evidence gives some support to the defendant's theory of innocence does not warrant the grant of habeas relief. *Id*.

*Conklin v. Schofield*, 366 F.3d 1191 (11th Cir. 2004); *see Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985)("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence[.]").

In this case, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could infer from the victim's testimony that Petitioner possessed the firearm throughout the charged crimes. The victim testified that when she opened her front door Petitioner held the gun up to her, declared "this is a robbery, don't look at me," and threatened to kill her if she said anything or tried anything. The victim did not look at Petitioner after he initially presented the gun because he said he would kill her if she did. Although she did not look at him because she feared for her life, she testified that she believed Petitioner still had the gun when he forced her to go to several ATMs to withdraw money. Doc. 18-1 at 199-209. Petitioner and the victim returned to her home where he sexually assaulted her, and then he again forced her to go to other ATMs and withdraw money. The victim begged the Petitioner not to hurt or kill her. *Id*. On this record, Petitioner has failed to show that the state court's rejection of his sufficiency-of-the-evidence claims relating to the firearm enhancements was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt*, 134 U.S. at 15.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the

showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

It is respectfully **RECOMMENDED** that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, Doc. 1, should be **DENIED** and a COA should be **DENIED.**

**IN CHAMBERS** this 30th day of June 2015.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## **NOTICE TO THE PARTIES**

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.